IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CONDALEE MORRIS, | ) | No. C 12-6132 LHK (PR) |
| Plaintiff, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; ADDRESSING PENDING MOTIONS; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM |
| v. | ) ) ) | |
| SGT. SANDOVAL, et al., | ) ) | |
| Defendants. | ) ) | |

Plaintiff, a state prisoner proceeding *pro se*, filed an amended complaint under 42 U.S.C. § 1983, arguing that defendants used excessive force upon him, and were deliberately indifferent to his safety and to his serious medical needs. Defendants have filed a motion for summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply.[1] Having carefully considered the papers submitted, the court GRANTS in part and DENIES in part defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff alleges that: (1) defendant Correctional Officer ("C/O") Blair used excessive force against him; (2) defendants Sgt. Sandoval, Sgt. Meyer, C/O Huff, and C/O Espinosa were deliberately indifferent to plaintiff's safety and failed to intervene; and (3) defendant LVN

---

[1] Defendants' administrative motion to file Exhibit 1 to the declaration of D. Nunley and Exhibit 1 to the declaration of Dr. J. Dunlap under seal is GRANTED. (Docket No. 60.)

Nunley was deliberately indifferent to plaintiff's serious medical needs. In response, defendants argue that they are entitled to summary judgment and qualified immunity.

The following facts are taken in the light most favorable to plaintiff.

On November 28, 2011, plaintiff was seen by an outside ophthalmologist and was diagnosed with end-stage glaucoma in his right eye. (Dunlap Decl. at ¶ 5, Ex. 1 at 1.) This meant that plaintiff's glaucoma was very advanced and that plaintiff had lost some vision in his right eye. (*Id.* at ¶ 5.) On that day, the ophthalmologist recommended that plaintiff continue with his eye-care medication which he had been previously prescribed. (*Id.* at ¶¶ 5-6, Ex. 1 at 1.) On December 20 and 21, 2011, plaintiff refused his eye-care medication. (*Id.* at ¶¶ 8-9.)

On January 7, 2012, C/O Blair worked at Salinas Valley State Prison ("SVSP") in the C-8 housing unit as the Administrative Segregation Property Officer. (Blair Decl. at ¶ 3.) That morning, Sgt. Sandoval instructed C/O Blair to help escort the General Population inmates to the C-1 yard to make room in the Administrative Segregation units, where plaintiff was housed without a cellmate. (*Id.* at ¶¶ 4-5.)

When C/O Blair informed plaintiff that plaintiff was supposed to move, plaintiff refused to do so. (Compl. at 20; Opp. at 7.) C/O Blair stepped away from plaintiff's cell after plaintiff asked him to, and returned with Sgt. Meyer. (*Id.*) Plaintiff repeated his refusal that he would not move to a different cell and asked C/O Blair and Sgt. Meyer to step away from the cell. (*Id.*) Both C/O Blair and Sgt. Meyer left and then returned with Sgt. Sandoval. (*Id.*) Plaintiff again stated his refusal to move, and told C/O Blair, Sgt. Meyer, and Sgt. Sandoval that if they didn't like it, they could issue him a Rules Violation Report. (*Id.*; Compl. at 20.) Sgt. Sandoval made it clear that he did not want plaintiff in any of the buildings in the C-yard and stated, "Do what you have to do." (*Id.*) Then, C/O Blair, J. Huff, C/O Espinosa, and Sgt. Meyer went outside the building and met up with C/O Vasquez. (*Id.*)

After the meeting, C/O Blair, C/O Espinosa, and an unidentified C/O approached plaintiff's cell door. (*Id.* at 21.) C/O Blair ordered plaintiff to turn around and "cuff up." (*Id.*) Plaintiff began to comply when C/O Blair reached into plaintiff's cell and began spraying pepper

spray into the cell. (*Id.*) The spray struck plaintiff on his back side, and plaintiff was not able to put his hands near the food port. (*Id.*) Plaintiff states that at no time did plaintiff try to touch C/O Blair. (*Id.*)

After C/O Blair emptied the first can of pepper spray, C/O Blair could not retrieve his arm out of the food port. (*Id.* at 22.) At that time, plaintiff had grabbed for the pepper spray can and tried to defend himself. (*Id.* at 22-23.) C/O Blair ordered plaintiff to let go, and when plaintiff refused, C/O Blair used the second can of pepper spray and sprayed plaintiff in the upper torso and chest. (*Id.* at 23.) Plaintiff still refused to release the first can of pepper spray. (*Id.*) C/O Blair tried to get his arm out of the food port and injured himself because plaintiff was still holding onto the first can of pepper spray. (*Id.*) When the second can of pepper spray ran out, C/O Blair obtained a third can of pepper spray from C/O Huff, who had arrived at plaintiff's cell as C/O Blair was discharging the second can of pepper spray. (Huff Decl. at ¶¶ 4, 6; Opp. Ex. D at 27.) C/O Blair then sprayed plaintiff in the face with this third can of pepper spray. (Compl. at 23.) Finally, plaintiff released his hold on the first can of pepper spray. (*Id.*; Huff Decl. at ¶ 8.)

C/O Huff then ordered plaintiff to turn around and cuff up. (Compl. at 23.) Plaintiff complied without resistance. (*Id.*) Plaintiff went to the medical clinic and requested treatment for his eyes. (*Id.*) LVN Nunley examined plaintiff but she refused to provide treatment. (*Id.* at 23, 34; Nunley Decl. at ¶ 4.) LVN Nunley merely informed plaintiff that his eyesight would come back eventually. (Compl. at 34.) Plaintiff was decontaminated with running water and air. (Sandoval Decl. at ¶ 9, Ex. 1 at 25-26.) Plaintiff's left eye later regained vision. (Compl. at 34.) However, plaintiff still could not see out of his right eye. (*Id.* at 23.) Later that day, plaintiff banged on his cell door and when LVN Nunley returned to see plaintiff, plaintiff again requested medical treatment for his right eye because he had end stage glaucoma and still could not see out of his right eye. (*Id.* at 34; Opp at 12.) LVN Nunley refused. (Opp. at 12.) C/O Blair later came into the holding area where plaintiff was and said, "This is how we do it down here in Salinas Valley State Prison." (Compl. at 24.)

On January 9, 2012, an optometrist examined plaintiff and noted plaintiff's advanced glaucoma and pain complaints. (Nunley Decl. at ¶ 14, Ex. 1 at 2.) The optometrist recommended an urgent ophthalmologist examination for plaintiff. (Nunley Decl. at ¶ 14, Ex. 1 at 2.) Plaintiff refused his eye-care medication several more times in January and February 2012. (Dunlap Decl. at ¶¶ 9-11.) By May 1, 2012, plaintiff no longer had useful vision in his right eye. (Dunlap Decl. at ¶ 15, Ex. 1 at 17.)

## ANALYSIS

I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts, and "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search

1  of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The
2  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
3  precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the
4  moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

II.  Legal Claims

  A.  Excessive Force

The arbitrary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Id.* at 6-7. In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7. In reviewing these factors, courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Taking the evidence in the complaint as true, and drawing all inferences therefrom in plaintiff's favor, there is a genuine issue of material fact as to whether C/O Blair's use of force was excessive. According to plaintiff, plaintiff began complying with C/O Blair's instruction to

1 "cuff up," but as plaintiff was doing so, C/O Blair reached into plaintiff's cell and began to pepper spray him without provocation. Plaintiff's version of events differs greatly from defendants' version of events. Accepting plaintiff's account as true, as this court must, an inference could certainly be drawn that C/O Blair assaulted plaintiff for the purpose of causing harm.

Defendants' argument that C/O Blair is entitled to qualified immunity is unpersuasive. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Regarding the first prong, the threshold question must be, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.*

The court finds granting summary judgment on the ground of qualified immunity is improper in this case. A dispute of fact exists as to what occurred after C/O Blair instructed plaintiff to "cuff up." Resolving all factual disputes in favor of plaintiff, the court concludes that C/O Blair violated plaintiff's clearly established right to be free from excessive force. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison guard's use of excessive force was clearly established by 1994"). Granting summary judgment on the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in

light of the clearly established law, a reasonable officer could not have believed his conduct was lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). Here, under plaintiff's version of the facts, no reasonable officer could believe that C/O Blair's actions were permitted under the Eighth Amendment.

Accordingly, defendants' motion for summary judgment as to C/O Blair is DENIED.

B. <u>Deliberate indifference to safety / failure to intervene</u>

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842; *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (recognizing that the Eighth Amendment requires that prison officials intervene on behalf of a prisoner if he has knowledge that other officers are violating the prisoner's constitutional rights). This is a question of fact. *Farmer*, 511 U.S. at 842.

This duty extends to a prison official that is aware of a specific risk of harm to the plaintiff only if he has a reasonable opportunity to intervene. *See Robins*, 60 F.3d at 1442. Here, plaintiff alleges that C/O Huff, Sgt. Sandoval, Sgt. Meyer, and C/O Espinosa were deliberately indifferent to plaintiff's safety by failing to intervene when C/O Blair pepper sprayed plaintiff. However, viewing the facts in the light most favorable to plaintiff, there is an absence of evidence that C/O Huff or Sgt. Meyer failed to intervene.

According to plaintiff, only C/O Blair, C/O Espinosa, and an unidentified correctional

1 officer approached plaintiff's cell door before C/O Blair began pepper spraying plaintiff.
2 (Compl. at 21.) Plaintiff does not allege, nor is there any evidence to suggest, that C/O Huff was
3 present when C/O Blair discharged the first can of pepper spray. Plaintiff states that after C/O
4 Blair sprayed him with the first can of pepper spray, plaintiff used "reasonable force" to defend
5 himself and refused to let go of the can of pepper spray even after being instructed to do so.
6 (Compl. at 22-23.) Defendants provide evidence, and plaintiff does not dispute that, as C/O
7 Blair was discharging the second can of pepper spray after plaintiff refused to release the first
8 can of pepper spray (Compl. at 23), C/O Huff arrived at plaintiff's cell in response to an alarm.
9 (Huff Decl. at ¶¶ 4, 6; Opp. Ex. D at 27.) When C/O Huff arrived at plaintiff's cell, C/O Huff
10 observed C/O Blair struggling with plaintiff, using pepper spray on plaintiff, and giving plaintiff
11 orders to submit to handcuffs. (Huff Decl. at ¶¶ 4-5; Sandoval Decl., Ex. 1 at 23.) C/O Blair
12 then requested a third can of pepper spray from C/O Huff, and C/O Huff handed his can to C/O
13 Blair. (Huff Decl. at ¶ 6; Blair Decl. at ¶ 15.) Only after C/O Blair discharged the third can of
14 pepper spray did plaintiff release his hold on the first can of pepper spray and submit to
15 handcuffs. (Huff Decl. at ¶ 8; Compl. at 23.)

16 Because the evidence is undisputed that C/O Blair and plaintiff were already struggling
17 and that C/O Blair had already discharged the first and second cans of pepper spray by the time
18 C/O Huff arrived at plaintiff's cell, there is an absence of evidence that C/O Huff could have
19 prevented C/O Blair from discharging the first and second pepper spray cans. *See Del Raine v.*
20 *Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) ("A failure of prison officials to act [with
21 knowledge that impending harm is easily preventable] suggests that the officials actually want
22 the prisoner to suffer the harm. If the harm is remote rather than immediate, or the officials
23 don't know about it or can't do anything about it, the subjective component is not established
24 and the suit fails.").

25 C/O Huff is also not liable for failing to protect plaintiff from the third can of pepper
26 spray. There is no evidence that C/O Huff saw or knew that C/O Blair initiated the altercation
27 between C/O Blair and plaintiff. As discussed above, by the time C/O Huff arrived on the scene,
28

C/O Blair and plaintiff were already struggling, and plaintiff was not complying with C/O Blair's instruction to release the first can of pepper spray or to submit to handcuffs. C/O Huff complied with C/O Blair's request for another can of pepper spray after plaintiff refused orders to release the first can of pepper spray or to submit to handcuffs. (Sandoval Decl., Ex. 1 at 23-24.) When C/O Huff arrived on the scene, C/O Huff reasonably perceived an altercation that posed a threat to the safety and security of the inmates and of the officers. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("decisions [by prison officials are] necessarily made in haste, under pressure, and frequently without the luxury of a second chance"). Thus, there is an absence of evidence that C/O Huff was deliberately indifferent to plaintiff's safety. That is, plaintiff has not demonstrated that C/O Huff was aware that C/O Blair posed a substantial risk of serious harm to plaintiff's safety, or that C/O Huff had no reasonable justification for exposing plaintiff to that risk. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

There is also no dispute of fact that by the time Sgt. Meyer arrived at the scene, the incident was over. (Meyer Decl. at ¶ 5.) Without any indication that Sgt. Meyer was present until after plaintiff had submitted to handcuffs, there is an absence of evidence that Sgt. Meyer had a reasonable opportunity to intervene. *See id.*

Although plaintiff alleges that C/O Blair, C/O Huff, Sgt. Sandoval, C/O Espinosa, and Sgt. Meyer had a meeting outside of the building with non-defendant Vasquez where they encouraged each other, and agreed to the use of pepper spray (opp. at 1, 7) plaintiff's statement is based only on mere speculation. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory."). Plaintiff provides no other evidence to support his belief that C/O Blair, C/O Huff, Sgt. Sandoval, C/O Espinosa, and Sgt. Meyer made an agreement while they were outside to have C/O Blair assault plaintiff with pepper spray. Because plaintiff has no personal knowledge or other evidence to make such an inference, there is an absence of evidence to support plaintiff's position that C/O Huff or Sgt. Meyer failed to intervene despite knowing that plaintiff faced a substantial risk of

serious harm. *See Farmer*, 511 U.S. at 842; *Robins*, 60 F.3d at 1442.

Thus, defendants' motion for summary judgment as to C/O Huff and Sgt. Meyer is GRANTED.

Plaintiff also alleges that Sgt. Sandoval is liable as a supervisor. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). Supervisor liability can also be established by showing the supervisor's knowing acquiescence to Eighth Amendment violations that are based upon deliberate indifference. *Oregon State University Student Alliance v. Ray*, 699 F.3d 1053, 1074-75 & n.18 (9th Cir. 2012). Here, viewing the evidence in the light most favorable to plaintiff, a reasonable inference can be made that Sgt. Sandoval's statement to C/O Blair to, "do what you have to do," gave C/O Blair the approval to use pepper spray on plaintiff even though unprovoked. Sgt. Sandoval's instruction can be inferred as knowing acquiescence to utilize whatever means necessary to remove plaintiff from his cell. Thus, there is a genuine issue of material fact as to whether Sgt. Sandoval was deliberately indifferent to plaintiff's safety and failed to intervene.

In addition, viewing the evidence in the light most favorable to plaintiff, C/O Espinosa was present and had the opportunity to intervene just prior to C/O Blair using the pepper spray on plaintiff. Thus, there is a genuine issue of material fact as to whether C/O Espinosa had the opportunity to intervene and failed to do so. *Robins*, 60 F.3d at 1442.

Having concluded that a genuine issue of material fact exists as to whether Sgt. Sandoval and C/O Espinosa were deliberately indifferent, the court next addresses whether they are entitled to qualified immunity. It is clearly established that prison guards have a duty to stop constitutional violations at the hands of other guards. *Id.*; *see Martinez v. Stanford*, 323 F.3d 1178, 1180, 1184 (9th Cir.2003) (holding that, because the law regarding excessive force was clearly established in 1994, that qualified immunity was improperly granted to officers who

allegedly beat an inmate during a cell extraction, despite the inmate's lack of resistance); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (holding that the Eighth Amendment was violated by an assault while an inmate was not resisting). Here, resolving all factual disputes in favor of plaintiff, the court concludes that a reasonable officer would know that acquiescing to unprovoked pepper spraying, or failing to intervene while another officer pepper sprayed an inmate without provocation were clearly unlawful. Accordingly, Sgt. Sandoval and C/O Huff are not entitled to qualified immunity.

Thus, defendants' motion for summary judgment regarding C/O Huff and Sgt. Meyer is GRANTED. Defendants' motion for summary judgment regarding Sgt. Sandoval and C/O Espinosa is DENIED.

### C. Deliberate indifference to serious medical needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060.

|    |                                                                                     |
|----|-------------------------------------------------------------------------------------|
| 1  | Plaintiff alleged that when he was taken to the medical clinic after he was pepper |

        Plaintiff alleged that when he was taken to the medical clinic after he was pepper sprayed, LVN Nunley examined him. (Compl. at 34; Nunley Decl. at ¶ 5, Sandoval Decl., Ex. 1 at 30-31.) During the examination, LVN Nunley recorded that plaintiff was decontaminated for pepper spray exposure and was instructed on how to perform self-decontamination. (Nunley Decl. at ¶ 8, Sandoval Decl., Ex. 1 at 30-31.) Plaintiff asked to be sent to "Central Medical," but LVN Nunley refused, and told plaintiff that the effects of the pepper spray would be gone in a few hours and plaintiff's eyesight would return to normal. (Compl. at 34.) Plaintiff alleges that he requested medical treatment for his end-stage glaucoma, but LVN Nunley refused. (Opp. at 12.) After some time, the eyesight in plaintiff's left eye later returned. (Compl. at 34.) However, plaintiff was still not able to see out of his right eye. (*Id.*) That same day, plaintiff began banging on his cell door, and LVN Nunley came to see plaintiff again after plaintiff complained about the loss of vision in his right eye to a correctional officer. (Opp. at 12.) Plaintiff again requested "medical treatment" but LVN Nunley refused to obtain plaintiff "any treatment for his end stage glaucoma after the pepper spray exposure." (*Id.*)

        The parties do not dispute that plaintiff had a serious medical need. Thus, the remaining question is whether LVN Nunley purposefully acted or failed to act, knowing that plaintiff faced a substantial risk of harm, and plaintiff suffered a resulting harm.

        Plaintiff's medical records show that, on November 28, 2011, a little more than one month before this incident, plaintiff was seen by an outside ophthalmologist and was diagnosed with end-stage glaucoma. (Dunlap Decl. at ¶ 5, Ex. 1 at 1.) This meant that plaintiff's glaucoma was very advanced and that plaintiff had already lost some vision in his right eye. (*Id.* at ¶ 5.) On November 28, 2011, the ophthalmologist recommended that plaintiff continue with his eye-care medication. (*Id.*, Ex. 1 at 1.) On December 20 and 21, 2011, plaintiff refused his eye-care medication. (*Id.* at ¶¶ 8-9.) On January 7, 2011, C/O Blair discharged pepper spray at plaintiff's face.

        Viewing the facts in the light most favorable to plaintiff, there is a genuine issue of material fact as to whether LVN Nunley was deliberately indifferent in her refusal to tend to

plaintiff's right eye complaint, or obtain treatment for plaintiff's right eye. The evidence is undisputed that, after plaintiff was pepper sprayed, plaintiff informed LVN Nunley that he suffered from end stage glaucoma and that after plaintiff was pepper sprayed, he was unable to see out of his right eye. A reasonable inference can be made that LVN Nunley was aware that plaintiff faced a substantial risk of harm, yet failed to take any reasonable steps to abate that risk by refusing to treat plaintiff's end stage glaucoma after exposure to pepper spray or seek treatment for the same.

Defendants also argue that LVN Nunley is entitled to qualified immunity. Defendants merely state that LVN Nunley did not violate any constitutional right because she ensured that plaintiff was decontaminated after being pepper sprayed, and thus, she is entitled to qualified immunity. However, defendants do not address plaintiff's assertion that plaintiff requested medical treatment from LVN Nunley for his end stage glaucoma after being exposed to pepper spray. The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment. *Estate of Ford v. Caden*, 301 F.3d 1043, 1053 (9th Cir. 2002) (extending *Saucier* to Eighth Amendment claims). Instead, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have reasonably believed their conduct was lawful. *See Osolinski v. Kane*, 92 F.3d 934, 939 (9th Cir. 1996) (granting qualified immunity on Eighth Amendment safety claim because reasonable prison official could have reasonably believed that defendants' conduct, as alleged, did not violate 8th Amendment). The defendants bear the burden of establishing that LVN Nunley's actions were reasonable, even if she violated the plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). However, defendants are silent as to the issue of reasonableness. Thus, LVN Nunley is not entitled to qualified immunity.

Accordingly, defendants' motion for summary judgment as to LVN Nunley is DENIED.

III. Pending Motions

Plaintiff has filed a motion for costs and attorney fees. (Docket No. 38.) In support of

his motion, plaintiff cites to California Code of Civil Procedure § 585(a), and states that he is entitled to attorney's fees based on defendants' default. However, defendants have not defaulted, and this rule is otherwise inapplicable. Plaintiff's motion is DENIED. (Docket No. 38.)

Plaintiff has also filed a motion requesting the court to provide attorney's fees and investigator fees. (Docket No. 47.) Plaintiff's request for attorney's fees under California Code of Civil Procedure § 386.6, concerning interpleaders, is inapplicable. Plaintiff's request for investigator fees is under California Evidence Code § 730 is also improper. The court has not determined whether an expert is necessary or needed. Accordingly, plaintiff's motion is DENIED. (Docket No. 47.)

Plaintiff has also filed a motion for judgment on the pleadings. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) may be filed when the pleadings are closed. The court uses the same standards applicable to a Rule 12(b)(6) motion. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999). For purposes of such a motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). On the face of the pleadings, the moving party must clearly establish "that no material issue of fact remains to be resolved." *Id.* at 1551. In light of the court's granting in part and denying in part defendants' motion for summary judgment, there clearly remains material issues of fact to be resolved. Thus, plaintiff's motion is DENIED. (Docket No. 48.)

IV.  Referral to Pro Se Prisoner Settlement Program

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above.

1 The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendants, or their representative, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from plaintiff for appointment of pro bono counsel.

## CONCLUSION

1. Defendants' motion for summary judgment is GRANTED as to C/O Huff and Sgt. Meyer. Defendants' motion for summary judgment is DENIED as to C/O Blair, C/O Espinosa, Sgt. Sandoval, and LVN Nunley.

2. Plaintiff's motion for costs is DENIED. Plaintiff's motion for attorney and investigator fees is DENIED. Plaintiff's motion for judgment on the pleadings is DENIED.

3. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claim in this action, as described above. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel, and the court will then set this matter for trial.

4. The clerk of the court shall mail a copy of this order, to Judge Vadas in Eureka, California.

5. The instant case is STAYED pending the settlement conference proceedings. The clerk shall ADMINISTRATIVELY CLOSE the file.

IT IS SO ORDERED.

DATED: June 11, 2014

LUCY H. KOH
United States District Judge

Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Addressing Pending Motions; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\LHK\CR.12\Morris132msj.wpd     15